IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2011 AUG 30 PM 3:43
CLERK_____
SO. DIST. OF GA.

JAMEL DEANGELO THOMPSON,

    Plaintiff,

vs.

CORRECTIONS CORPORATION
OF AMERICA; TODD THOMAS;
PEGGIE COOPER; MICHAEL
WOODS; JOSEPH RUSSELL;
and JOHN M. FERGUSON,

    Defendants.

CIVIL ACTION NO.: CV510-069

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Jamel Thompson ("Plaintiff"), who is currently incarcerated at the Troup County Correctional Institution in LaGrange, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at Coffee Correctional Facility in Nicholls, Georgia. Defendants filed a Motion for Summary Judgment. Plaintiff filed a Response, and Defendants filed a Reply. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff contends that Defendant Woods was deliberately indifferent to the substantial risk of inmate-on-inmate assaults at Coffee Correctional Facility, which led to him being assaulted by another inmate. Plaintiff also contends that Defendants Corrections Corporation of America, Thomas, Cooper, Russell, and Ferguson refused to

AO 72A
(Rev. 8/82)

investigate his allegations out of retaliation because he had a successful grievance against Coffee Correctional Facility.

Defendants contend that Plaintiff's Complaint is time-barred. Defendants also contend that Plaintiff failed to exhaust his available administrative remedies prior to filing his Complaint. Defendants assert that Plaintiff's deliberate indifference and retaliation claims fail on the merits. Defendants also assert that Plaintiff's claims against the individually named Defendants (Defendants Cooper, Thomas, Ferguson, Russell, and Woods) are based on their supervisory positions, which is an insufficient basis for liability. Finally, Defendants assert that Plaintiff's claims against Corrections Corporation of America ("CCA") cannot stand, as Plaintiff has failed to show any evidence of a policy or custom CCA imposed which led to an attack by another inmate.

## DISCUSSION AND CITATION TO AUTHORITY

Defendants assert that Plaintiff's cause of action is time-barred because the assault he suffered at the hands of another inmate occurred on September 26, 2007, and Plaintiff did not file his Complaint until June 10, 2010. In response, Plaintiff states that the statute of limitations should be tolled due to his mental incapacity and because of his attempts to exhaust his administrative remedies. Plaintiff also states that his retaliation claim is not barred by the statute of limitations, as Defendants continue to retaliate against him by refusing to complete their investigation into this incident or allow Plaintiff to file a post-investigation grievance.

Constitutional claims brought pursuant to section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir.

AO 72A
(Rev. 8/82)

2011). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33. Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id.

Here, the events giving rise to Plaintiff's cause of action began on or before September 26, 2007, which is the date Plaintiff was assaulted by another inmate, despite informing Defendant Woods of the risk of an assault by another inmate. Thus, Plaintiff had until September 26, 2009, to file a cause of action in which he alleged Defendant Woods was deliberately indifferent to a serious risk of harm. Plaintiff did not sign his Complaint until June 7, 2010 (Doc. No. 1, p. 26), and his Complaint was not filed upon the docket of the Court until June 11, 2010. (Dkt. Entry No. 1). Plaintiff's deliberate indifference claim against Defendant Woods clearly is time-barred, absent tolling of the two-year statute of limitations period.

Plaintiff contends that he suffered from mental incapacity from "July 2008 until late June 2010, meaning that this action would be filed timely and within the Georgia two year statute of limitation period." (Doc. No. 53, p. 7) (citing O.C.G.A. § 9-3-90 and 9-3-91). However, even accepting as true Plaintiff's contention that he suffered from mental health issues as a result of the assault by another inmate, he is not entitled to tolling of the statute of limitations. Pursuant to O.C.G.A. § 9-3-90(a), the statute of limitations period is tolled for "persons who are *legally* incompetent because of mental retardation or mental illness[.]" (Emphasis supplied). There is no evidence before this

3

Court that any court declared Plaintiff to be legally incompetent because of any mental illness diagnosis[1] at any time such that § 9-3-90(a) would toll the applicable limitations period. Section 9-3-90(b) specifically excludes from tolling causes of action brought by an imprisoned person. Thus, section 9-3-90[2] does not allow tolling of the statute of limitations period found in § 9-3-33.

Plaintiff also contends that the applicable statute of limitations was tolled while he was exhausting his available administrative remedies. This contention, too, must fail. Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In

---

[1] The undersigned does not discount Plaintiff's contention that he suffered from mental health issues, as the record contains sufficient evidence supporting this contention. (Doc. No. 53-8). The undersigned's point is only that Plaintiff has not been declared legally incompetent as a result of his mental health issues.

[2] "If any person suffers a disability specified in Code Section 9-3-90 after his right of action has accrued and the disability is not voluntarily caused or undertaken by the person claiming the benefit thereof, the limitation applicable to his cause of action shall cease to operate during the continuance of the disability." O.C.G.A. § 9-3-91. For the same reasons § 9-3-90 does not toll the statute of limitations, section 9-3-91 does not toll the limitations period.

other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

The grievance procedure in place at Coffee Correctional Facility in September 2007 allowed inmates to grieve about "[a]ny condition, policy, procedure, action or lack thereof that affect inmates[.]" (Doc. No. 56-1, p. 3). Though inmate complaints were "encourage[d]" to "be resolved on an informal basis without the filing of a formal grievance[,]" this did not mean that formal grievances were not to be filed. (Id.). If an inmate's complaint could not be resolved informally through verbal discussion with staff, the inmate "shall first attempt to resolve the complaint with a written informal grievance before filing a formal grievance." (Id.). An informal grievance was required to be filed "no later than 10 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 5). An untimely filing "will be rejected[.]" (Id. at p. 4). However, at the completion of the informal grievance process, an inmate could file a formal grievance "within 5 business days of . . . receipt of the written resolution of his Informal Grievance. The Grievance Coordinator may waive this time limit for good cause." (Id. at p. 6). The Warden has 30 calendar days in which to file a response, and an inmate dissatisfied with the Warden's response could file an appeal with the Commissioner of the Georgia Department of Corrections' Office. (Id. at pp. 7-8).

5

The only evidence before the Court concerning a grievance filing are Informal Grievances Numbered 51679 and 52196. Plaintiff stated in Informal Grievance Number 51679, which is dated May 27, 2010, that his family told him that Coffee County refused to investigate further the assault on September 27, 2007. This Informal Grievance was rejected as untimely filed. (Doc. No. 53-8, p. 24). In Informal Grievance Number 52196, dated June 1, 2010, Plaintiff stated, "D. Warden Cooper informed my family on 6/1/10 that they refuse to keep allowing me to win grievances and mention a grievance that I won $50 from Coffee. My family was calling about my head assault, property and the status of the investigation." (Doc. No. 53-8, p. 25). Plaintiff's informal grievance was rejected, in part, for being untimely filed. (Id.; Doc. No. 53-8, p. 20). Alisa Trowell, who is currently the Grievance Coordinator at Coffee Correctional Facility, declared in her Affidavit that her "records indicate that [Plaintiff] neglected to timely file and exhaust a prison grievance regarding the events he alleges in his complaint." (Doc. No. 46-1, p. 23). The record before the Court supports Ms. Trowell's declaration that Plaintiff did not properly exhaust his administrative remedies prior to filing his cause of action.

The informal grievances Plaintiff filed make no mention of Defendant Woods or of Plaintiff's assertion that Defendant Woods was deliberately indifferent to a threat to Plaintiff's safety. The undersigned recognizes that Plaintiff need not have used any particular words or phrases in his informal grievances. Nevertheless, there must be some assertion set forth in a grievance, whether informal or formal, which would alert the person against whom the grievance was filed that the inmate's complaint concerned him or her. See Jones, 549 U.S. at 217-18. Plaintiff's informal grievances seem to concern the investigation of the assault he suffered at the hands of another inmate, not

AO 72A
(Rev. 8/82)

that Plaintiff expressed his concerns for his safety to an officer and his concerns were ignored. Plaintiff knew or should have known within 10 calendar days of September 26, 2007, that Defendant Woods was told of Plaintiff's concerns for his safety and ignored those concerns; thus, Plaintiff should have filed an informal grievance against Defendant Woods on or before October 6, 2007. (See Doc. No. 56-1, p. 5).

In addition, even if the undersigned were to construe Plaintiff's informal grievances as sufficient to alert Defendant Woods that these filings were about him and his alleged inaction, these informal grievances were rejected, in part, as being untimely filed. These rejections concluded the grievance process at the informal level only, not in its entirety, as Plaintiff could have filed formal grievances since the informal grievance procedure did not resolve his issues. Moreover, Plaintiff filed these informal grievances on May 27 and June 1, 2010, and he signed his Complaint, filed with this Court on June 11, 2010, on June 7, 2010. Had Plaintiff pursued the formal grievance procedures, these procedures could not have been completed by the time his Complaint was executed or filed. In sum, Plaintiff is not entitled to tolling on his deliberate indifference claim based on his contention that he was exhausting his administrative remedies.

Likewise, Plaintiff did not exhaust his administrative remedies prior to filing his cause of action regarding his retaliation claim. The undersigned recognizes Plaintiff's assertion that Defendants' alleged retaliatory actions continue to this day, and therefore, the statute of limitations period has not expired as to his retaliation claim. Nonetheless, Plaintiff is required to have exhausted his administrative remedies on his retaliation claim before he filed his Complaint, and he failed to do so.

It is unnecessary to address the remaining portions of Defendants' Motion.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's deliberate indifference claim be **DISMISSED** as time-barred by the applicable statute of limitations period and that his retaliation claim be **DISMISSED**, without prejudice, due to his failure to exhaust.

**SO REPORTED** and **RECOMMENDED**, this 30th day of August, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)